UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MICHAEL RIVERA | No. 3:17-cr-207 (SRU) |

**ORDER**

On September 14, 2017, Rivera waived indictment and pleaded guilty (pursuant to a plea agreement) to a one-count Information charging him with conspiracy to distribute, and to possess with intent to distribute, 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846. *See* Information, Doc. No. 1; Min. Entry, Doc. No. 4; Plea Agreement, Doc. No. 6-1.[1] On July 12, 2019, I held a sentencing hearing and sentenced Rivera to four years' imprisonment and four years' supervised release. *See* Min. Entry, Doc. No. 54; Judgment, Doc. No. 55. Rivera is currently housed at the Federal Correctional Institution, Allenwood Medium ("Allenwood Medium FCI"). *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Dec. 7, 2020). Rivera's scheduled release date is October 21, 2021. *See id.*[2] Rivera has thus served approximately 75 percent of his sentence, accounting for good time credit.

On August 3, 2020, Rivera filed a *pro se* motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act. *See* Mot. for Release, Doc. No. 61. In that motion, Rivera asks that I "reduce his sentence to time served or release him to

---

[1] Rivera stipulated that his relevant and reasonably foreseeable offense conduct involved at least 100 grams but less than 400 grams of heroin. *See* Plea Agreement, Doc. No. 6-1, at 3.

[2] Rivera is eligible for placement in a halfway house on March 31, 2021 and "is eligible for release [to a halfway house] as early as" January 2021. *See* Supp. Mem. of Law in Support Mot. for Release, Doc. No. 64-1, at 2; BOP Records, Doc. No. 66-3, at 2.

home confinement" based on the threat of COVID-19 in prisons and his hyperthyroidism. *Id.* at 1, 7–11. Rivera also explains that he is rehabilitated and has used his time in prison wisely to set himself up for success upon his release. *See id.* at 2–3, 11–12. On November 10, 2020, Rivera's newly appointed counsel filed a supplemental memorandum in support of Rivera's motion for release. *See* Supp. Mem. of Law in Support Mot. for Release ("Rivera's Supp. Mem. of Law"), Doc. No. 64-1. In that memorandum, Rivera adds that the status of COVID-19 infections at Allenwood Medium FCI and his obesity also counsel in favor of his early release. *See id.* at 1. Rivera also filed relevant BOP records, including his medical records, under seal. *See* BOP Records, Doc. No. 66. On November 17, 2020, the government filed an opposition. *See* Gov't Opp'n, Doc. No. 67. The government argues that Rivera's hyperthyroidism is not an "extraordinary and compelling" reason warranting his release but that his obesity may be. *See id.* at 5–6. However, the government argues that, regardless, it opposes Rivera's release based on the sentencing factors under 18 U.S.C. § 3553(a). *See id.* at 6–7.

For the following reasons, I **grant** Rivera's motion for release.

### I.  Standard of Review

The First Step Act of 2018 (the "FSA") amended the language of section 3582(c)(1)(A). Before the FSA, only the Director of the Bureau of Prisons (the "BOP") could make a motion for the court to reduce a defendant's sentence based on extraordinary and compelling reasons. It is widely acknowledged that the BOP fell short in its gatekeeper role and that, as a result, too few inmates were granted compassionate release. *See, e.g.*, U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons' Compassionate Release Program* i (April 2013), https://oig.justice.gov/reports/2013/e1306.pdf ("[W]e found that the existing BOP compassionate release program has been poorly managed

and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally ill inmates dying before their requests were decided."); Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 105–06 (2019); William W. Berry III, *Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Congress passed the FSA against that backdrop. The FSA altered section 3582(c)(1)(A), in part, to increase the use of compassionate release. *See* 164 Cong. Rec. H10358 (daily ed. Dec. 20, 2018) (titling changes to section 3582(c)(1)(A) as "Increasing the Use and Transparency of Compassionate Release"). In particular, the FSA amended section 3582(c)(1)(A) to allow a defendant him- or herself to bring a motion for compassionate release. Section 3582(c) now reads, in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case –
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
> >
> > > (i)  extraordinary and compelling reasons warrant such a reduction; . . .
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Until recently, I (and many other district courts around the country) interpreted the "applicable policy statement[] issued by the Sentencing Commission" to be U.S.S.G. § 1B1.13. *See, e.g.*,

3

*United States v. Almontes*, 2020 WL 1812713, at *2 (D. Conn. Apr. 9, 2020).  Section 1B1.13 reads, in relevant part:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)
>    (A) Extraordinary and compelling reasons warrant the reduction; or
>
>    (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Two application notes to section 1B1.13 further elucidate the meaning of "extraordinary and compelling reasons."  Application note three provides, simply, that rehabilitation of a defendant "is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13 cmt. n.3 (citing 28 U.S.C. § 994(t)).  Application note one sets forth three specific examples of "extraordinary and compelling reasons" and also one catch-all provision.  The first example explains that an inmate's medical condition rises to the level of an extraordinary and compelling reason when the inmate is suffering from a terminal illness or some other serious condition that "substantially diminishes" that inmate's ability to provide self-care within the prison.  U.S.S.G. § 1B1.13 cmt. n.1(A).  The other two specific examples in application note one regard defendants over the age of 65 (U.S.S.G. § 1B1.13 cmt. n.1(B)) and situations in which an inmate may be needed to care for his children or his spouse/partner (U.S.S.G. § 1B1.13 cmt. n.1(C)).  *See id.*  The catch-all provision, titled "Other Reasons,"

4

provides that extraordinary and compelling reasons also exist when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission has not amended section 1B1.13 since Congress passed the FSA. Indeed, it could not because a quorum of the Sentencing Commission still does not exist. As a result, some anachronisms within section 1B1.13 are in tension with the FSA. In particular, two clauses in section 1B1.13—including the catch-all provision at U.S.S.G. § 1B1.13 cmt. n.1(D)—still require that the Director of the BOP be the one to bring a motion for relief under section 3582(c)(1)(A). Of course, though, the FSA altered section 3582(c)(1)(A) directly and eliminated that requirement by allowing a defendant him- or herself to bring such a motion under certain circumstances. In part for that reason, the Second Circuit has recently held that section 1B1.13 is *not applicable* to compassionate release motions brought by defendants themselves. *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Because in this case Rivera himself made a motion for compassionate release, I may "consider the full slate of extraordinary and compelling reasons," and nothing in the "now-outdated version" of section 1B1.13 limits my discretion. *Id.* at 237.

In granting motions for reductions in sentence under section 3582(c)(1)(A) that are based on the threat posed by COVID-19, courts within this circuit and across the country have concluded that "extraordinary and compelling" reasons for release may exist when an incarcerated defendant suffers from health conditions or other infirmities that make him particularly susceptible to serious complications should he contract COVID-19. *See, e.g.*, *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020).

But courts have focused on other factors, too. For instance, numerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an "extraordinary and compelling" reason to grant an inmate's motion for compassionate release. *See, e.g.*, *United States v. Sturdivant*, 2020 WL 6875047, at *7 (D. Conn. Nov. 23, 2020) (releasing prisoner who had served about 90 percent of his sentence); *United States v. Wooten*, 2020 WL 6119321, at *8 (D. Conn. Oct. 16, 2020) (same); *United States v. Woodward*, No. 3:11-cr-177, Order, Doc. No. 35, at 9–10 (releasing prisoner who had served about 80 percent of his sentence); *United States v. O'Neil*, 464 F. Supp. 3d 1026, 1036 (S.D. Iowa 2020) (releasing prisoner with projected release date in 2023 who had served about 73 percent of his sentence); *United States v. Rivera*, 466 F. Supp. 3d 310, 317 (D. Conn. 2020) (releasing inmate with about one year (ten percent) of his sentence remaining); *United States v. Jepsen*, 451 F. Supp. 3d 242, 246 (D. Conn. 2020); *United States v. Campagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020). Given the threat of COVID-19, when a defendant has a small fraction of his sentence remaining, "[t]he benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave." *Perez*, 451 F. Supp. 3d at 294.

Further, several courts have noted that an ongoing and current outbreak at an inmate's prison facility can help contribute to "extraordinary and compelling" reasons warranting that inmate's release. *See, e.g.*, *Sturdivant*, 2020 WL 6875047, at *7; *United States v. Park*, 456 F. Supp. 3d 557, 561 (S.D.N.Y. 2020) ("The Court's concern with Ms. Park's health during this time is greatly exacerbated by her place of incarceration."); *United States v. Quintanilla*, 2020 WL 5593203, at *3 (N.D. Ind. Sept. 17, 2020) (noting that a prisoner's "showing that his

particular institution is facing a serious outbreak of COVID-19 infections" is one factor that helps establish "extraordinary and compelling reasons" warranting a reduction in sentence) (cleaned up).[3]

Courts also routinely focus on a defendant's rehabilitation as one (non-dispositive) factor contributing to "extraordinary and compelling reasons." *See, e.g.*, *United States v. Rodriguez*, 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020) ("[W]hile rehabilitation alone is insufficient, it can interact with the present coronavirus pandemic to create an extraordinary and compelling reason for a sentence reduction.") (quoting *Brooker*, 976 F.3d at 238) (cleaned up); *United States v. Millan*, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020); 28 U.S.C. § 994(t) (providing that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

The defendant bears the burden of proving that he is entitled to a sentence reduction. *See United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020). Courts "have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Jones*, 2020 WL 2782395, at *2 (D. Conn. May 29, 2020) (quoting *United States v. Tagliaferri*, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019)) (cleaned up). Indeed, section 3582(c)(1)(A) grants a district court permissive authority to reduce an inmate's sentence under certain conditions. *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . *may* reduce the term of imprisonment . . . ."). A court may not reduce a term of imprisonment without "considering the

---

[3] Similarly, many courts rely on the *absence* of an outbreak at an inmate's particular institution in holding that no extraordinary and compelling reasons warrant a reduction in that inmate's sentence. *See, e.g.*, *United States v. Bolanos*, 2020 WL 6684659, at *2 (E.D. Cal. Nov. 12, 2020) (denying motion for release based, in part, on fact that inmate "is in a prison that has no active cases of Covid 19"); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."). That reasoning also acknowledges that the status of a COVID-19 outbreak at a particular institution can help constitute "extraordinary and compelling reasons" warranting a reduction in an inmate's sentence.

factors set forth in section 3553(a) to the extent that they are applicable." *Id.*; *see also United States v. Torres*, 464 F. Supp. 3d 651, 658 (S.D.N.Y. 2020) (explaining that courts must consider section 3553(a) factors before granting a sentence reduction pursuant to section 3582(c)(1)(A)).

## II.     Discussion

### A.   Background

On December 21, 2016, Rivera joined a conspiracy involving a deal for about 100 grams of heroin.  *See* PSR, Doc. No. 21, at ¶ 6.  Rivera brokered a drug deal between two other individuals; "the deal went awry and an innocent victim was shot" by one of those individuals. Gov't Opp'n, Doc. No. 67, at 1.  "Throughout the time of the offense, a firearm was possessed by Mr. Rivera."  PSR, Doc. No. 21, at ¶ 6.

### B.   Parties' Arguments[4]

In his *pro se* motion, Rivera argues that his hyperthyroidism "places him among those at highest risk of death or severe illness" should he contract COVID-19.  *See* Mot. for Release, Doc. No. 61, at 1–2, 7–8.  Because he is "nearing the end of his sentence," Rivera explains that just a "modest reduction could mean the difference between life and death."  *Id.* at 2.  Rivera reports that he "has used his time in prison positively and productively."  *Id.*  Indeed, Rivera notes that he is "employed as an essential worker" and is participating in the Residential Drug Abuse Program (RDAP).  *See id.*  Rivera acknowledges that he "has amassed a prior criminal record," but notes that he "is not a danger to the community."  *Id.* at 11.  Rivera argues that he has "shift[ed] the focus of his life and he is dedicated to prioritizing his health and spending time

---

[4] As the parties acknowledge, Rivera has satisfied section 3582(c)(1)(A)'s exhaustion requirement.  *See* Rivera's Supp. Mem. of Law, Doc. No. 64-1, at 3; Gov't Opp'n, Doc. No. 67, at 5 (acknowledging that "more than 30 days have passed since Rivera submitted his request to the Warden for compassionate release"); Rivera's Compassionate Release Request, Ex. A to Gov't Opp'n, Doc. No. 67-1; BOP's Reply, Ex. B to Gov't Opp'n, Doc. No. 67-2.

with his family." *Id.*  Rivera "no longer has any desire for a criminal lifestyle" and "is receptive to any assistance that can be provided by the U.S. Probation Office." *Id.* at 11–12.  Rivera notes that, upon his release, he "has familial assistance which will assist him as he transition[s] back into the community." *Id.* at 12.  At the time of Rivera's *pro se* submission (Aug. 3, 2020), Rivera acknowledged that there were zero reported COVID-19 infections at Allenwood Medium FCI.  *See id.* at 8.

In Rivera's supplemental memorandum of law (submitted by counsel), Rivera points out that he is also obese, which puts him "at an elevated risk of serious COVID-19 complications." Rivera's Supp. Mem. of Law, Doc. No. 64-1, at 2–4.  Rivera also provided a (then) more up-to-date picture of the status of COVID-19 infections at Allenwood Medium FCI:  As of November 10, 2020, there were four positive cases.  *See id.* at 3.  Finally, Rivera argues that—due to the threat of COVID-19—his period of confinement has been more difficult and restrictive than anticipated.  *See id.* at 6.  Rivera notes that "[t]he § 3553(a) factors can be met in this case by an order of home confinement as a condition of special release."  *Id.*  Rivera points out that a "sentence of home confinement, enabling Mr. Rivera to quarantine and stay safe while exploring employment opportunities and online counseling options would address the punitive and rehabilitative components of his sentence."  *Id.* at 8.  Rivera also stresses the stability of his release plan.  Upon release, he would live with his friend in Hartford.  *See id.* at 7.  As soon as Rivera's long-term girlfriend (with whom he has a teenage child) rents an apartment, Rivera will move in with her.  *See id.*

The government take a different view.  First, the government notes that "the CDC has not recognized [] hyperthyroidism as an at-risk condition."  Gov't Opp'n, Doc. No. 67, at 6.

9

However, the government concedes that Rivera's BMI of 32.6[5] qualifies him as obese, and so he does have "an at-risk condition that makes him *eligible* for compassionate release." *Id.* However, the government argues, "[j]ust because he may be eligible for release[] does not justify release." *Id.* That is because releasing Rivera would not satisfy the section 3553(a) sentencing factors. *See id.* at 6–7. In particular, the government opposes Rivera's release "based on the need for the sentence to protect the public, serve just punishment, deter Rivera and others, and promote respect for the law." *Id.* at 6. The government points out that "Rivera has a long and serious criminal history" that includes "prior convictions for robbery, violation of a protective order, criminal possession of a weapon, criminal possession of a firearm (twice), sale of narcotics, possession with intent to sell narcotics, and escape from custody (twice)." *Id.* at 6–7 (citing PSR, Doc. No. 21, at ¶¶ 25–34). The government emphasizes that "Rivera was a fugitive when he committed this offense after absconding from a Halfway House." *Id.* at 7 (citing PSR, Doc. No. 21, at ¶ 35). Finally, the government notes that "releasing Rivera now while he is participating in RDAP hardly serves the sentence's rehabilitative component the Court intended given Rivera's long history of drug use." *Id.*

C. I Will Reduce Rivera's Sentence to Time Served.

I will reduce Rivera's sentence because "extraordinary and compelling" reasons warrant his release. In addition, reducing Rivera's sentence to time served comports with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

a. Extraordinary and Compelling Reasons

---

[5] Rivera self-reports his weight as 225 pounds. *See* Rivera's Supp. Mem. of Law, Doc. No. 64-1, at 2 & n.1. However, as the government points out, Rivera's most recent weight measurement in his medical records is 208 pounds. *See* Gov't Opp'n, Doc. No. 67, at 6; BOP Records, Doc. No. 66, at 52 (noting that Rivera weighed 208 pounds on May 22, 2020). For purposes of this motion, I assume as true that Rivera weighs 208 pounds and thus has a BMI of 32.6. *See Adult BMI Calc.*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (height of 5 feet 7 inches and weight of 208 pounds yields BMI of 32.6) (last visited Dec. 7, 2020).

I hold that "extraordinary and compelling" reasons warrant reducing Rivera's sentence to time served. Four factors, combined, lead me to that conclusion. First, Rivera suffers from obesity, which is a condition that—according to the CDC—puts individuals at an elevated risk of severe illness should they contract COVID-19.[6] *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION (last updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Indeed, certain courts have released inmates based, in part, on that condition. *See, e.g.*, *United States v. Franco*, 2020 WL 4344834, at *2–3 (S.D.N.Y. June 24, 2020); *United States v. Rodriguez*, 2020 WL 4592833, at *2–3 (S.D. Cal. Aug. 5, 2020); *United States v. Delgado*, 457 F. Supp. 3d 85, 89 (D. Conn. 2020).

Second, Rivera is near the end of his carceral sentence. Rivera will be released from custody in less than one year—on October 21, 2021. Further, Rivera will be eligible to live in a halfway house beginning as soon as January 21, 2021, which is less than two months from now. *See* BOP Records, Doc. No. 66-3, at 2. Rivera has thus served approximately 75 percent of his sentence. As noted above, numerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an "extraordinary and compelling" reason to grant that inmate's motion for compassionate release. *See, e.g.*, *O'Neil*, 464 F. Supp. 3d at 1036; *Rivera*, 466 F. Supp. 3d at 317; *Jepsen*, 451 F. Supp. 3d at 246; *Campagna*, 2020 WL 1489829, at *3; *Perez*, 451 F. Supp. 3d at 294. Indeed, in granting several motions for compassionate release, I have noted that I agree with those courts. *See Sturdivant*, 2020 WL

---

[6] I agree with the government that Rivera's hyperthyroidism does not help contribute to an extraordinary and compelling reason warranting his release. So far as I am aware, there is no medical link between hyperthyroidism and risk of severe illness from COVID-19. *See, e.g.*, *Novel Coronavirus (COVID-19) and the Thyroid: Frequently Asked Questions*, AM. THYROID ASSOC., https://www.thyroid.org/covid-19/coronavirus-frequently-asked-questions/ (last visited Dec. 7, 2020) ("Thus far, there is no indication that patients with autoimmune thyroid disease are at greater risk of getting COVID-19 or of being more severely affected should they acquire the COVID-19 infection.").

6875047, at *7; *Wooten*, 2020 WL 6119321, at *8; *Woodward*, No. 3:11-cr-177, Order, Doc. No. 35, at 9–10.

Third, Allenwood Medium FCI is currently experiencing a significant COVID-19 outbreak. Today, Allenwood Medium FCI has 77 positive cases (69 inmates), 193 inmates who have recovered, and 12 staff who have recovered. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020). As already noted, courts routinely consider the status of COVID-19 infections at the inmate's particular institution in determining whether extraordinary and compelling reasons warrant reducing an inmate's sentence. The COVID-19 outbreak at Allenwood Medium FCI is significant, and it is certainly possible that the outbreak will continue to worsen. *Cf. United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prisons are powder kegs for infection."). Indeed, just two weeks ago, I granted another motion for compassionate release filed by an inmate who was housed at Allenwood Medium FCI. *See Sturdivant*, 2020 WL 6875047, at *2. In that case, I held that the status of the COVID-19 outbreak at Allenwood Medium FCI was one factor that helped contribute to extraordinary and compelling reasons warranting that inmate's release. *See id.* at *7. The outbreak at Allenwood Medium FCI is worse now than it was then, and so this factor weighs even more heavily in Rivera's favor.

Fourth, Rivera appears to have totally rehabilitated himself. I already remarked at Rivera's sentencing (which took place after he had already completed a substantial part of his sentence in this case) that he appeared to be on the right rehabilitative path. *See, e.g.*, Sentencing Tr., Doc. No. 60, at 16:14–17 ("I'm impressed with . . . what you've done since your arrest. The mentoring, the self-reflection, and really the goal orientation that you've undertaken I think is all good."). I made the same observation in the judgment I entered in this case. *See* Judgment, Doc.

12

No. 55, at 1 ("Rivera responded well to his arrest and has been mentoring other detainees while awaiting sentencing. He has a reduced risk of recidivism because he now has the support of his girlfriend."). Rivera appears to have continued along the same path. For instance, he is enrolled in RDAP even though he is unlikely to earn any time off his sentence through that program. *See* Sentencing Tr., Doc. No. 60, at 17:19–18:1; BOP Records, Doc. No. 66-3, at 1–2. Just as importantly, Rivera has not amassed any disciplinary tickets: The BOP notes that Rivera "has maintained clear conduct to date." BOP Records, Doc. No. 66-3, at 2.

Based on those four reasons, I hold that Rivera has established that "extraordinary and compelling reasons" warrant a reduction in his sentence to time served.

      b. Section 3553(a) Factors

Reducing Rivera's sentence to the time he has already served also results in a sentence sufficient to achieve the purposes of sentencing. Pursuant to section 3553(a), I must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). I also must consider other factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. *See id.* § 3553(a)(1).

In my view, a sentence of the time that Rivera has already served is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *See id.* § 3553(a)(2). Rivera has served about three years in prison for a non-violent drug offense.[7]

---

[7] Although the parties stipulated that Rivera possessed a firearm "throughout the time of the offense," the firearm was not part of the charged conduct to which Rivera pleaded guilty. *See* PSR, Doc. No. 21, at ¶ 6; Plea Agreement, Doc. No. 6-1, at 3 (Guideline Stipulation).

13

Although I agree with the government that Rivera has a significant criminal history, I have already explained that I view Rivera's criminal history as serious but not necessarily a good reflection of who Rivera is today. *See* Sentencing Tr., Doc. No. 60, at 16:10–11 (commenting to Rivera that "you need to make a break from that" criminal lifestyle, and "I think you have"); *id.* at 16:14–17 ("I'm impressed with . . . what you've done since your arrest. The mentoring, the self-reflection, and really the goal orientation that you've undertaking I think is all good."); Judgment, Doc. No. 55, at 1 ("Rivera has responded well to his arrest and has been mentoring other detainees while awaiting sentencing.").

Although a sentence of about three years is not an incredibly long sentence for Rivera's crime, it is a significant sentence and so, in my view, it affords adequate general deterrence to others who would also sell heroin. *See* 18 U.S.C. § 3553(a)(2). A sentence of the time Rivera has already served also affords Rivera adequate specific deterrence. The marginal (deterrent) utility of the remaining months on Rivera's sentence is small, particularly considering that Rivera will spend the next four years on supervised release. Should Rivera violate the terms of that release, he will face the possibility of incarceration longer than the time currently remaining in his sentence.

Rivera's rehabilitation—as discussed above—also weighs in his favor. Further, due to the restrictive prison measures necessary to contain COVID-19, Rivera will likely not have the chance for much further meaningful rehabilitation between now and the end of his sentence. *See United States v. Hill*, 2020 WL 2542725, at *3 (D. Conn. May 19, 2020) (holding that the "interests of rehabilitation are not advanced by [the inmate's] continued confinement" because "the restrictions imposed at FCI Danbury due to the COVID-19 crisis" left the inmate without

"access to prison programs").  Finally, I am persuaded that Rivera's release plan will set him up for success and will help ensure that the public is protected from further of Rivera's crimes.

### III.     Conclusion

For the foregoing reasons, Rivera's motion for release, doc. no. 61, is **granted**.  Rivera's motion to seal his BOP records, doc. no. 65, is **granted**.  When Rivera's counsel submitted a supplemental memorandum of law in Rivera's support, doc. no. 64-1, counsel also filed a duplicative motion for release, doc. no. 64.  Because I grant Rivera's motion for release, I **deny as moot** Rivera's duplicative motion for release, doc. no. 64.

I reduce Rivera's sentence to time served, and he shall be immediately released from BOP custody.  Upon release, Rivera shall commence serving his four-year term of supervised release consistent with the conditions that I have already imposed.  *See* Judgment, Doc. No. 55.  Because of the current state of the COVID-19 pandemic both at Allenwood Medium FCI and in society at large, I modify Rivera's conditions of supervised release to include the additional condition that Rivera must self-quarantine for 14 days immediately following his release.  Rivera must contact the United States Probation Office as soon as possible, but in no event later than 72 hours after his release.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 7th day of December 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge